# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**MARK ALAN LANE,**

          **Petitioner,**

   **v.**

                              **CASE NO.  16-3094-JWL**

**CLAUDE MAYE, Warden,**

          **Respondent.**

## MEMORANDUM AND ORDER

This is a pro se petition for writ of habeas corpus filed under 28 U.S.C. § 2241 by a federal inmate.   Petitioner claims that he was denied due process in prison disciplinary proceedings.[1]  The court issued an Order to Show Cause, respondent filed an Answer and Return (Doc. 8)("A&R"), petitioner filed a Traverse (Doc. 14), and the matter is ready for resolution. The court finds that petitioner does not allege facts establishing a federal constitutional violation and denies relief.

## Grounds

Petitioner presents two grounds in his petition.[2]   As Ground (1) he claims that the Disciplinary Hearing Officer ("DHO") did not have "some evidence" to find him guilty.   He

---

[1]     In 2002, Mr. Lane pled guilty in the Southern District of Indiana to conspiracy to launder monetary instruments and conspiracy to possess with intent to distribute methamphetamine and is serving a 360-month sentence. See *Lane v.* Maye, App. Case No. 16-3078 (10th Cir. July 7, 2016).  During the challenged disciplinary proceedings, he was serving his sentence at Federal Correctional Institution One in Victorville, California ("FCI-Victorville").   He is currently confined at the United States Penitentiary in Leavenworth, Kansas.   His projected release date via good conduct time is January 23, 2028.

[2]     The pleading requirements are more demanding for habeas petitions than ordinary civil complaints.   A habeas petitioner must specify all grounds and state supporting facts for each in his petition.   In *Mayle v. Felix*, 545 U.S. 644, 655 (2005), the Supreme Court explained the habeas pleading requirements as follows:

> Under (FRCP) Rule 8(a), applicable to ordinary civil proceedings, a complaint need only provide "fair notice of what the plaintiff's claim is, and the grounds upon which it rests."   *Conley v.*

alleges in support that the DHO "used the evidence" of petitioner's statement at the hearing: "I was not going out." As Ground (2) petitioner claims that the DHO violated *Wolff v. McDonnell*. He alleges in support that he was advised of his rights but was not taken to the DHO hearing by prison staff and thus was not present to give a statement or evidence. Petitioner did not specify the relief he seeks in his petition but in his Traverse asks the court to restore his 14 days of good conduct time and remove the Incident Report (IR) from his record.

## Facts

Respondent provided the administrative record of petitioner's disciplinary proceedings with the A&R. The court finds the following uncontroverted facts from the pleadings and exhibits of both parties. In April 2014, petitioner was placed in the Special Housing Unit ("SHU") at FCI-Victorville. Petitioner received IRs on June 4 and July 1 of 2014 for refusing to leave the SHU out of fear for his safety. He was found guilty and sanctioned each time with loss of privileges only, suspended 30 days pending 90 days clear conduct.[3]

On July 15, 2014, petitioner was ordered to move out of the SHU and into general population. He again refused. Minutes later, the staff member who observed the incident wrote IR No. 2605630 charging petitioner with violating Code 306: Refusing to work, or refusing to accept a program assignment. A&R, Attachments (Doc. 8-1)("Doc. 8-1") at 104. The reporting

---

*Gibson*, 355 U.S. 41, 47 (1957). Habeas Rule 2(c) is more demanding. It provides that the petition must "specify all the grounds for relief available to the petitioner" and state the facts supporting each ground." See also Advisory Committee's note on subd. (c) of Habeas Corpus Rule 2, 28 U.S. C., p. 469 ("In the past, petitions have frequently contained mere conclusions of law, unsupported by any facts.); Advisory Committee's Note on Habeas Corpus Rule 4, 28 U.S.C., p. 471 ("'[N]otice' pleading is not sufficient for the petition is expected to state facts that point to a real possibility of constitutional error." . . . A prime purpose of Rule 2(c)'s demand that habeas petitioners plead with particularity is to assist the district court in determining whether the respondent should be ordered to "show cause" why the writ should not be granted." 28 U.S. C. § 2243.

*Mayle*, 545 U.S. at 655.

[3]     Petitioner did not make these allegations in his petition but in his subsequent discovery motion (Doc. 9).

officer stated in the IR that Lane was ordered out of the Special Housing Unit and refused to leave.  Less than two hours later, a copy of the IR was delivered to petitioner.  On July 15, 2014, staff investigating the incident advised petitioner of his right to remain silent at all stages of the disciplinary process, and petitioner chose to make no statement at that time.  *Id*. at 106.  The IR was forwarded to the United Disciplinary Committee ("UDC") for further action.[4]  Petitioner appeared before the UDC on July 18, 2014, and commented, "I am afraid for my life" or "I fear for my safety."  That day petitioner was provided a BOP document entitled "Inmate Rights at the Discipline Hearing," notifying him of his rights during the disciplinary process.  Petitioner signed this document on July 18, 2014, acknowledging advisement of these rights.  *Id.* at 108.  Petitioner was also provided BOP form "Notice of Discipline Hearing Before the (DHO)," which advised him of his entitlement to have a staff member represent him and his right to call witnesses and present documentary evidence at the DHO hearing.  Petitioner marked that he did not want a representative.  He was directed to list his witnesses, but instead marked that he did not want witnesses.  Mr. Lane signed this document on July 18, 2014.  The UDC found that petitioner had excessive disciplinary issues because he had more than 3 violations within a year and referred the charge to the DHO for further hearing.  *Id.*  Petitioner admits the foregoing facts in his Traverse (Doc. 14), at 1.

A disciplinary hearing was held 12 days later on July 30, 2014.[5]  The DHO found petitioner guilty and imposed sanctions of 14 days "Disallowed Good Conduct Time" and 14

---

[4]     Bureau of Prisons ("BOP") regulations governing the Inmate Discipline Program are codified at 28 CFR § 541.3 et seq.  Section 541.5(b) provides that after an inmate receives an IR, a BOP staff member will investigate it and "specifically inform" the inmate of any charge against him.  Section 541.7 provides that the UDC will review the incident report once the staff investigation is complete.

[5]     In responding to petitioner's discovery motion, respondent reveals that the DHO who conducted Mr. Lane's hearing "always" holds hearings involving SHU inmates at FCI-Victorville in the SHU itself and has the inmate brought to the area in front of the officer's station where the hearings are conducted.  See Response (Doc. 13).

days "Impound of Personal Property."   Petitioner was advised of his right to appeal, and the parties agree that he exhausted administrative remedies.   The administrative record includes a copy of "Discipline Hearing Officer Report" dated August 8, 2014.  Doc. 8-1 at 112-114.  This Report set forth the specific evidence relied upon by the DHO:

> The DHO relies upon the reporting officer's statement which indicates on July 15, 2014 . . .inmate Lane . . . was ordered out of Special Housing unit to return to General Population.  Inmate Lane . . . refused to leave the Special Housing Unit.
>
> The DHO reviewed the investigation and UDC portions of the disciplinary process and noted inmate Lane . . . stated to the UDC he was afraid for his life.
>
> Additionally, the DHO could not ignore your discipline history of refusing to accept a work or program assignment.  While this does not directly indicate you committed this prohibited act, it does clearly demonstrate your willingness to engage in this type of behavior.
>
> Based upon the facts, the DHO is convinced inmate Lane . . . committed the prohibited act . . . .

*Id*. at 113.  The DHO provided the following reasons for the sanctions:

> Any action on the part of any inmate to refuse a work or program assignment seriously jeopardizes the security of the facility and the safety of others, as well as hinders the ability of staff to effectively manage inmates.  The disallowance of good conduct time was imposed based on the severity of the offense, and the inmate's sentence commitment.   Other sanctions were given to serve as punishment for the inmate's inappropriate behavior, and to affect the inmate's future behavior.

*Id*. at 114.  The Report was delivered to petitioner on August 8, 2014.  *Id.*

### Standards

To obtain habeas corpus relief, an inmate must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S. C. § 2241(c)(3).  A federal prisoner has a constitutionally protected liberty interest in his earned good-conduct time. See *Brown v. Smith*, 828 F.2d 1493, 1494 (10th Cir. 1987).  Therefore, petitioner was entitled to due process at his disciplinary hearing.  *Howard v. Bureau of Prisons*, 487 F.3d 808, 811 (10th

Cir. 2007).  However, because prison disciplinary proceedings "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so," the "full panoply of rights due a defendant in (criminal) proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 561 (1974); *Abdulhaseeb v. Ward*, 173 Fed. App'x 658, 661 (10th Cir. 2006).  In *Wolff*, the Supreme Court held that in order to satisfy due process in a prison disciplinary proceeding, the inmate must receive: (1) "advance written notice of the claimed violation" no less than 24 hours prior to the hearing; (2) an opportunity "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals;" and (3) a "written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken." *Wolff*, 418 U.S. at 563-66; *Abdulhaseeb*, 173 Fed. App'x at 661 (citing *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 455, 454 (1985)); *Smith v. Maschner*, 899 F.2d 940, 946 (10th Cir. 1990).   The Supreme Court subsequently added that when "some evidence" supports the decision to revoke good time credits, the requirements of procedural due process have been met.  *Hill*, 472 U.S. at 454; *Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996)(review of disciplinary proceeding limited to whether BOP followed three steps mandated by *Wolff* and whether some evidence supported discipline.).  "Ascertaining whether [the some evidence] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56; see *Mitchell*, 80 F.3d at 1445.

## Discussion

The court has no difficulty finding that the evidence relied upon by the DHO satisfied the "some evidence" standard. "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Terry v. Jones*, 259 Fed. App'x 85, 86 (10th Cir. 2007), *cert. denied*, 554 U.S. 924 (2008)(quoting *Hill*, 472 U.S. at 456). A decision to revoke good time credits would only violate due process if the record is "devoid of evidence, providing no support for a disciplinary board's decision." *Id.* (citing *Hill*, 472 U.S. at 457). Mr. Lane sparsely alleged this ground and minimal supporting facts in his petition. He argued in his Traverse that the DHO's use of a statement allegedly made by petitioner at the DHO hearing did not satisfy the "some evidence" standard. This argument fails because the DHO also relied upon other unchallenged evidence. The DHO cited the reporting officer's statement in the IR, the staff investigation report, and petitioner's prior inculpatory statement at the UDC hearing. Thus, even if the court disregards the contested statement, the record still reflects some evidence to support the DHO's decision.

The court likewise has no difficulty finding that petitioner was afforded all the due process protections mandated by *Wolff v. McDonnell*. Mr. Lane baldly made this claim in his petition but did not clearly allege facts indicating which of the three procedural steps were denied and how. The administrative record and the undisputed facts plainly demonstrate to the contrary that Mr. Lane was afforded all three procedural protections mandated by *Wolff*. He was given advance written notice of the charge by delivery of the IR 15 days prior to the DHO hearing. He was advised of his procedural rights 12 days before the DHO hearing and given the opportunity to present witnesses and documentary evidence in his defense, which he declined. Finally, he was provided a copy of the DHO's written statement, which set forth the evidence relied upon and the reasons for the disciplinary action and sanctions. Furthermore, Mr. Lane

having had 13 prior IRs can hardly allege that he did not understand the proceedings.[6] Accordingly, the court denies this claim as having no factual support.

The court's main concern is petitioner's claim that he was not taken by staff to his DHO hearing. The parties disagree on this single fact. Surprisingly, they present directly opposing views on this uncomplicated question. Petitioner insists that he was not present at his disciplinary hearing, while the hearing officer swears that petitioner was present. Normally, a factual issue of this sort would call for an evidentiary hearing. However, the court believes based on all the undisputed facts in this case that a hearing is not necessary for three main reasons. First, the agency's administrative record contains all the ordinary evidence of petitioner's presence at his DHO hearing. Second, the record contains nothing to support petitioner's allegation that he was absent; and his bald, self-serving allegation is insufficient by itself to refute the administrative record and overcome the deference due prison officials by the court. Finally, and most significantly, even if the court accepts petitioner's allegation that he was absent, the record shows that this alleged error by prison officials was harmless.

The record clearly contains some evidence that petitioner attended the DHO hearing. *Muhammad v. Wiley*, 330 Fed.Appx. 165, 168 (10th Cir. 2009); see *Grossman*, 447 F.3d at 805. The forms filled out in petitioner's disciplinary proceedings packet indicate that he attended this hearing. The record contains a declaration filed under penalty of perjury and signed by R. Bourn, the DHO at petitioner's hearing. Therein, the DHO swears that petitioner appeared before him; he read petitioner his due process rights; he confirmed that petitioner had received a

---

[6]        Respondent provides disciplinary data indicating that Mr. Lane has faced 13 disciplinary actions in addition the one under challenge. Doc.8-1 at 92-96. Moreover, under 28 C.F.R. § 541.11, inmates arriving at a BOP institution are provided with details regarding prohibited acts and potential sanctions, types of disciplinary actions, the disciplinary process and their rights and responsibilities thereunder. This information is also available in program statements and the corresponding regulations, which are available in the prison law library, and includes details regarding a Code 306 violation. Mr. Lane's two prior similar IR's were for similar 306 violations. Charging an inmate with a Code 306 violation for refusing to leave the SHU and enter general population where he may be required to participate in programs including work assignments is neither illogical nor arbitrary or capricious.

copy of the IR; he advised petitioner of his opportunity to present witnesses and petitioner declined; petitioner made a brief statement, which he noted admitted the charge; and petitioner was given the opportunity to present documentary evidence but declined.  Doc. 8-1 at 6-7.  The record tellingly does not contain the form utilized by the DHO when an inmate declines to appear at his hearing.  Doc. 8-1 at 116.  The forms in the packet, the DHO report, stating that petitioner was read his rights and made a statement is also evidence that he attended the hearing. The DHO's affidavit and the DHO Hearing Report reflect that petitioner declined the right to present witnesses and documentary evidence, which undercuts petitioner's argument that he was denied the opportunity to present evidence.  The record shows and petitioner admits that he attended the UDC hearing and made a statement.  This statement was inculpatory and was later relied upon by the DHO.  The UDC hearing and the DHO hearing may be viewed as "two discrete stages of the disciplinary procedure" and together they provided petitioner with all the process he was due.  See *Muhammad v. Wiley*, 330 F. App'x 165, 167–69 (10th Cir. 2009).

Petitioner's allegation that he did not attend his DHO hearing is simply insufficient by itself to contradict the agency's administrative record and to overcome the deference owed by this court to prison officials in matters of discipline, classification and security.  see *Muhammad*, 330 Fed.Appx. at 165; *Dokes v. Scibana*, 2006 WL 1892592, *5 (W.D. Okla. 2006)("Petitioner contends that he was denied right to be present and opportunity to be heard at the disciplinary hearing(s).  To the contrary, the records of the disciplinary proceedings reflect that petitioner was present at both hearings.").  Petitioner's bald allegation is vague and not supported by any corroborating evidence.  See *Muhammad,* 2008 WL 4079303, *8 (D. Colo. 2008), *aff'd*, 330 Fed.App'x 165.  In support of this claim, petitioner alleged in his petition only that he was not taken to the hearing and thus not allowed to present evidence or a statement.  He has improperly

made other vague allegations elsewhere, which might suggest that he declined to attend believing he would receive lesser sanctions or he refused to leave his SHU cell for the hearing.[7]   In his subsequent discovery motion (Doc. 9), petitioner newly alleged that he did not waive his right to be present at the DHO hearing and claimed that a videotape from a prison security camera would show that he remained in his cell during the hearing.   In his subsequent Traverse, he first repeated from his administrative appeals that he was told "nothing would change" and first referred to his two prior IRs for refusing to leave the SHU that resulted in loss of privileges rather than good time.[8]   Petitioner's vague scattershot allegations leave questions unanswered and never adequately describe circumstances surrounding the DHO hearing that might corroborate his claim.   His bald allegation that he was not present is also self-serving.   He stated on administrative appeal that he was incorrectly told there would be no change and sought to overturn the harsher sanction of lost good-time.   His waiver of his right to present witnesses and documentary evidence left Mr. Lane with little ground to challenge the outcome of his DHO hearing.   On the other hand, as respondent has pointed out, the DHO had no apparent motivation

---

[7]       Petitioner filed a regional administrative appeal claiming that the DHO did not read and review his due process rights with him on July 30, 2014, because petitioner did not go to the DHO hearing.  He alleged in support that a guard told him to get ready for his DHO hearing then later returned and said that he had lost 14 days good time.  The Regional Director responded that petitioner was present at the hearing, was provided due process and that the DHO had a basis for finding that he committed the prohibited act.  The Regional Director also specifically rejected petitioner's claim that he could not "enter general population due to safety concerns" noting that the SIS office had interviewed petitioner and "found no information supporting your contention that there is a specific threat to your safety." *Id.* at 51.  Petitioner filed his final administrative appeal on September 28, 2014 and attached a copy of this Central Office Administrative Remedy Appeal to his petition.  He made the same claim and allegations as before, and added that the guard told him he "did not need to go, nothing will change," but the DHO and the guard were incorrect.  Petition (Doc. 1) at 6.  The Central Office Response was not decided until March 30, 2016.

[8]       Petitioner urges the court to consider these two similar prior IRs for refusing to leave the SHU based on fear for his safety.  However, petitioner has no right to refuse prison housing assignments and security classifications.  In any event, he presented no factual basis for this defense, which is the only one even vaguely mentioned during the challenged disciplinary proceedings or in the instant petition.

to hold the hearing without petitioner present or to falsify the record.  The court finds that Mr. Lane's allegation does not refute the evidence in the administrative record.[9]

Even if petitioner could present evidence that he was not taken out of his cell for his DHO hearing, the court would deny relief.  Without question, a defendant has a federal constitutional right to be present at all critical stages of his criminal prosecution.  However *Wolff*, which is still repeatedly cited as the source of an inmate's procedural due process protections at a prison disciplinary hearing, did not include the right to be present among its three carefully-crafted constitutional prerequisites.  *See Hogue v. Bruce*, 279 Kan. 848, 851, 113 P.3d 234 (Kan. 2005)("*Wolff* did not explicitly refer to an inmate's right to attend the disciplinary hearing."). Nonetheless, "such a right is implicit in the inmate's right to call witnesses and present evidence," and an inmate's presence at the disciplinary hearing allows him "to observe and participate in the proceedings and provides a check on the authority of the disciplinary body, thus serving the goals of due process identified by the Court in *Wolff*, which are to ensure fundamental fairness and protect against arbitrary governmental action."  *Id.* at 851-52 (citing *Wolff*, 418 U.S. at 564; see *Battle v. Barton*, 970 F.2d 779, 782 (11th Cir. 1992), *cert. denied* 507 U.S. 927 (1993); *Moody v. Miller*, 864 F.2d 1178, 1180 (5th Cir.1989)).   Thus, courts generally assume that an inmate has the right to be present at his disciplinary hearing to present a defense.

---

[9]    Mr. Lane is a pro se litigant, and as such is entitled to a liberal construction of his allegations by the court. However, his sparse allegations are often stated unclearly, not fully explained, and improperly presented.  The court has no authority to supply additional factual allegations to round out a pro se litigant's claim or to construct a legal theory on his behalf.  See *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).  Mr. Lane failed to present all his supporting factual allegations in his petition and thereafter improperly submitted additional allegations in subsequent filings that are not an amended petition.  Mr. Lane is no stranger to federal court.  He is reminded that in order to add any claims or significant allegations to his petition, he must follow the rules regarding amendment of civil pleadings.  This means he must have filed a motion for leave to file an amended petition with a complete amended petition upon court-approved forms attached.  He may not simply add to his petition piecemeal by submitting motions and other filings that contain some additions but are not a complete amended petition.  In the interest of judicial economy, the court has considered petitioner's scattershot additional allegations made in his discovery motion and traverse, but not any other improper attempts to amend that are unrelated to the claims in his petition.

The BOP's regulations wisely afford an inmate the right to be present, and nothing in this opinion should be read as holding that an inmate does not have a right to attend his DHO hearing.

However, an inmate's right to be present at his disciplinary hearing, like his due process rights expressly recognized in *Wolff*, "is not absolute" as it "may be limited by the competing concerns of maintaining institutional safety and other correctional goals." See *Hogue*, 279 Kan. at 852 (citing see *Battle*, 970 F.2d at 782)(citing *Ponte v. Real*, 471 U.S. 491, 497 [1985]). It may also be waived or refused by the inmate. In *Wolff*, the Supreme Court explained that one of the procedural protections that must be afforded inmates in disciplinary proceedings, the "right to offer the testimony of witnesses," is "in plain terms the right to present a defense, the right to present the defendant's version of the facts . . . to the (hearing body) so it may decide where the truth lies." *Wolff*, 418 U.S. 585 (citing *Washington v. Texas*, 388 U.S. 14, 19 (1967)). Nonetheless, in 2006 the Tenth Circuit held that the harmless error analysis applies to the inmate's right to present witnesses:

> No decision of this court has explicitly stated that harmless error review applies to a habeas petition alleging a denial of the right to present witnesses at prison disciplinary hearing. We have held, in the context of a 42 U.S.C. § 1983 suit, that a prisoner cannot maintain a due process claim for failure to permit witness testimony if he fails to show that the testimony "would have affected the outcome of his case." *Chesson v. Jaquez*, 986 F.2d 363, 366 (10th Cir.1993). Every other circuit to consider the precise question before us has applied harmless error review to habeas petitions in similar contexts. *Brown v. Braxton*, 373 F.3d 501, 508 (4th Cir. 2004); *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). See also *Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir.1991)("If a person may be convicted and obliged to serve a substantial prison sentence notwithstanding a constitutional error determined to be harmless, surely [the result of a prison disciplinary proceeding may properly stand] despite a harmless error in adjudicating the violation"). We join these circuits in concluding that errors made by prison officials in denying witness testimony at official hearings are subject to harmless error review.

*Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006).  In 2007, the Tenth Circuit again applied the harmless error analysis to the right to present witness testimony as well as the right to present documentary evidence.  They reasoned as follows.

> "Chief among the due process minima outlined in *Wolff* was the right of an inmate to call and present witnesses and documentary evidence in his defense...." *Ponte v. Real*, 471 U.S. 491, 495, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985). But this right is not absolute; rather it is "circumscribed by the necessary 'mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application.' " *Baxter v. Palmigiano*, 425 U.S. 308, 321, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) (quoting *Wolff*, 418 U.S. at 556, 94 S.Ct. 2963). Because of the "greater hazards to institutional interests" posed by confrontation and cross-examination, "there is no general right to confront and cross-examine adverse witnesses" in the context of prison disciplinary proceedings. *Id.* at 321, 322 n. 5, 96 S.Ct. 1551 (citation omitted). And while prison officials must consider an inmate's request "to call or confront a particular witness ... on an individualized basis," *Ramer v. Kerby*, 936 F.2d 1102, 1105 (10th Cir.1991), "errors made by prison officials in denying witness testimony at official hearings are subject to harmless error review," *Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir.2006).

*Howard*, 487 F.3d at 812–13; *Jordan v. Wiley*, 411 Fed. App'x 201 (10th Cir. 2011).  By logical extension of the foregoing authorities, petitioner's right to be present is also subject to harmless error analysis under the facts of this case.

The court finds that even if petitioner proved that he was not taken out of his cell to appear near the officer's station in the SHU for his DHO hearing, this error was harmless. Petitioner does not describe any exculpatory testimony, documentary evidence or statement that he could have presented at the DHO hearing that conceivably could have changed the outcome of the DHO proceeding.  See *Jordan v. Wiley*, 411 Fed. App'x 201, 209-10 (10th Cir. 2011); *Grossman*, 447 F.3d at 805 (inmate cannot maintain due process claim unless missing evidence would have affected outcome of case); *Powell v. Addison*, 2014 WL 5147684 (W.D. Okla. 2014).  Instead, his statements that his absence violated due process are conclusory.  The Tenth Circuit noted in *Grossman* that the petitioner "also makes conclusory statements that he was

improperly denied the right to present evidence and that one or more other witnesses were not called at his disciplinary hearing," but denied his claim finding that *Grossman* "does not identify any of these other witnesses in his appellate brief, nor does he explain what evidence he was unable to introduce, making it impossible to review this claim." See *Grossman*, 447 F.3d at 804 n. 1.  Petitioner does not claim that he was denied the opportunity to confront the reporting officer, nor could he, since the Supreme Court in *Wolff* expressly declined to recognize a right to confrontation in prison disciplinary hearings.  See *Baxter*, 425 U.S. at 321 (quoting *Wolff*, 418 U.S. at 556,).[10]  Petitioner had vaguely repeated his failed defense from two prior proceedings at his UDC hearing and has never alleged facts suggesting any other defense that he would have presented at the DHO hearing.  Further, petitioner does not suggest what evidence he would have controverted at the hearing or how.  see *Powell v. Addison*, 2014 WL 5147684, *2 (W.D. Okla. Oct. 14, 2014)(petitioner's claim that he was not notified of his rescheduled hearing and was impaired at the hearing due to medication denied as harmless error because he failed to allege prejudice resulting in his ability to prepare a defense).  He does not identify any information that he would have provided or gained at the hearing or otherwise explain what evidence he was unable to produce or what defense or statement he was unable to present.  Thus, even if the court held a hearing, found that petitioner was not at the DHO hearing, and found this was error by prison officials, it would hold the error harmless.

## Other Filings

The court briefly mentions petitioner's discovery motion for production of a security video, which the court previously granted.  Respondent was ordered to produce any such

---

[10]     The Supreme Court's reasoning is instructive here.  First, they emphasized that a prison disciplinary hearing is not a part of a criminal prosecution and thus the full panoply of rights in criminal proceedings do not apply.  Second, they observed that courts "should not be too ready to exercise oversight and put aside the judgment of prison administrators."

videotape, but informed the court that any prison videotape taken on the hearing date was destroyed long ago.  There is no proper claim or evidence that respondents improperly refused to provide a videotape.  Mr. Lane did not request tapes at his hearings and made no request that the DHO review videotapes.  On administrative appeal, petitioner did not request a video or audio tape, and never claimed that he was denied an express request to for tapes or to have them considered.[11]   Thus, there has been no denial of due process with regard to any videotape evidence in this case.

Since the A&R and the Traverse were filed, respondent filed a "Motion for Leave to File Sur-Reply to Petitioner's Traverse" (Doc. 15), and petitioner filed his "Reply" (Doc. 16) to Respondent's A&R as well as "Objections to Respondent Motion to File Sur-Reply" (Doc. 17). The court declines to consider these unauthorized and unnecessary pleadings.  None is anticipated by the Habeas Rules or was required by the court.[12]   In any event, a cursory examination reveals that they contain no facts or arguments that would change the court's resolution of this matter.

IT IS THEREFORE ORDERED that this petition for writ of habeas corpus is denied.

IT IS FURTHER ORDERED that Respondent's Motion for Leave to file Sur-Reply to Petitioner's Traverse (Doc. 15) is denied.

**IT IS SO ORDERED.**

---

[11]     This is not a case like *Howard*, 487 F.3d 808, where the inmate requested review of videotapes prior to the DHO hearing, expressly requested that the DHO review videotape at the hearing, the DHO declined to review the tapes, and the inmate raised the denial of the DHO's review of the videotape in his administrative appeal.  Id.; Powell v. Daniels, 2011 WL 1465577, at *4 (D. Colo. Apr. 18, 2011)(Court found no denial of due process with regard to any videotape evidence where inmate had not requested review of tapes prior to the DHO hearing, never made a request to see tapes or have them considered, and did not raise a claim regarding tapes on administrative appeal.).

[12]     In respondent's motion for leave, he seeks to address "the new issues" raised by petitioner in his Traverse "specifically related to his request for videotapes and audio recordings."  However, the court does not consider any new issues that petitioner might have attempted to raise in his Traverse that were not raised in his petition.

Dated this 22nd day of August, 2016 at Kansas City Kansas.

<u>s/ John W. Lungstrum</u>
JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE